Justice Laurie McKinnon delivered the Opinion of the Court.
*853 ***105 ¶1 A jury convicted Jeffery Elec Hamilton (Hamilton) of two counts of incest. The Eighth Judicial District Court, Cascade County, sentenced Hamilton to 100 years imprisonment with 75 years suspended and 25 years of parole ineligibility on each count. Hamilton appeals, and we address the following issues:
1. Did Hamilton waive his statutory vagueness claims by failing to ***106 raise them before trial?
2. Did Hamilton waive his objections to the District Court's sentence by failing to raise them below?
3. Did the District Court err when it issued a written judgment that conflicted with its oral pronouncement of the sentence?
¶2 We affirm in part and reverse and remand in part. On remand, we instruct the District Court to correct its written judgment to reflect that Hamilton's sentences are to run concurrently.
FACTUAL AND PROCEDURAL BACKGROUND
¶3 On January 2, 2014, Hamilton pleaded not guilty to charges of incest against his daughter in violation of § 45-5-507, MCA. That day, the District Court signed an order scheduling an omnibus hearing for February 19, 2014, and notifying Hamilton that "[p]re-trial motions not noticed at the omnibus hearing will be allowed only for good cause and reasonable diligence shown." When the District Court held Hamilton's omnibus hearing the following month, Hamilton listed the motions he planned to file. Although he reserved the right to file a general motion "to dismiss," he did not state that he planned to challenge the constitutionality of Montana's statute defining "sexual contact." In March 2014, the State filed an Amended Information charging Hamilton with two counts of sexual intercourse without consent and two counts of incest. The District Court arraigned Hamilton on the Amended Information on April 24, 2014. Between his arraignment and the first day of trial on October 6, 2014, Hamilton filed numerous motions with the District Court in anticipation of trial, but none of them challenged the constitutionality of Montana's statute defining "sexual contact."
¶4 Before trial, when Hamilton and the State settled jury instructions, Hamilton did not object to the District Court's instruction on the definition of "sexual contact," which was identical to the definition found in § 45-2-101(67), MCA. Moreover, Hamilton did not argue that the statutory definition of "sexual contact" was unconstitutionally vague.
¶5 Beginning October 6, 2014, the District Court held a three-day jury trial. Late in the evening on the final day of trial, the jury informed the District Court that it could not reach a consensus on two of Hamilton's charges. The District Court then gave the jury a Norquay instruction-an instruction given to deadlocked juries that we adopted in State v. Norquay , 2011 MT 34, ¶ 43, 359 Mont. 257, 248 P.3d 817. After further deliberation, the jury found Hamilton guilty on both counts of incest and not guilty on both counts of sexual intercourse ***107 without consent.
¶6 On October 10, 2014, a juror contacted Hamilton's defense counsel. She told him that in retrospect, she believed the jury instruction defining "sexual contact" was misleading. Based on the juror's statements, Hamilton filed a motion to dismiss on November 14, 2014, arguing for the first time that the definition of "sexual contact" found in § 45-2-101(67)(a), MCA, was unconstitutionally vague. The State responded to Hamilton's motion to dismiss by arguing that it was time-barred and that the definition of "sexual contact" was constitutional. The State also objected to allowing Hamilton to call a juror to testify at a hearing on the motion.
¶7 The District Court conducted a hearing to rule on Hamilton's motion to dismiss in March 2015. Over the State's continued objections, the District Court heard testimony from Hamilton's former juror. Ultimately, the District Court denied Hamilton's motion to dismiss. It found that Hamilton's motion was untimely and that there were no deficiencies in the jury instructions based on the juror's testimony.
*854 ¶8 After denying Hamilton's motion to dismiss, the District Court immediately moved on to his sentencing hearing. During Hamilton's sentencing hearing, the State called Probation and Parole Officer Tim Hides, and Hamilton called Dr. Michael Scolatti, who had performed a psychosexual evaluation of Hamilton. The District Court also allowed Hamilton's victim to give a statement.
¶9 At the time of Hamilton's offense, § 45-5-507(5)(a), MCA (2009 and 2011), set a mandatory minimum sentence of 100 years imprisonment with 25 years of parole ineligibility for the crime of incest when the victim was 12 years of age or younger and the offender was 18 years of age or older. The statute allowed for an exception to the mandatory minimum through § 46-6-222(6), MCA (2009 and 2011), if a district court determined, based on a psychosexual evaluation of the defendant, that an alternative sentence afforded a better opportunity for the defendant's rehabilitation and "for the ultimate protection of the victim and society...."
¶10 During Hamilton's sentencing hearing, both parties argued extensively about whether the above exception applied. After considering the testimony and arguments, the District Court found that the exception was inapplicable and sentenced Hamilton:
I'm going to give you the 100 years for both counts. I'm going to suspend 75 years of each of the counts and make you ineligible for parole for the 25 years on the Count III because that's what the legislature said. I don't quite see the exception.
***108 ¶11 At the end of the hearing, the District Court asked both parties whether they had any questions. Hamilton asked for clarification on whether his sentences would run consecutively or concurrently. The District Court stated they would run concurrently. Hamilton raised no other issues at the time, and the sentencing hearing concluded.
¶12 On March 15, 2015, the District Court issued its judgment of conviction and sentencing order. The sentencing order did not restate the District Court's prior oral pronouncement that Hamilton's sentences would run concurrently. The order also omitted any reasoning for why the District Court declined to apply the exception from § 46-6-222(6), MCA (2009 and 2011), to Hamilton's mandatory minimum sentence, as required by § 46-6-223, MCA. After receiving the order, Hamilton raised no further issues with the District Court.
STANDARD OF REVIEW
¶13 The grant or denial of a motion to dismiss in a criminal case is a question of law which we review de novo. State v. Robison , 2003 MT 198, ¶ 6, 317 Mont. 19, 75 P.3d 301.
¶14 "We review criminal sentences that include at least one year of actual incarceration to determine whether they are legal." State v. Garrymore , 2006 MT 245, ¶ 9, 334 Mont. 1, 145 P.3d 946. A sentence is legal when it is within the statutory parameters. Therefore, the legality of a sentence is a question of law which we review de novo. Garrymore , ¶ 9. We review the district court's findings of fact on which its sentence is based to determine whether they are clearly erroneous. State v. Shults , 2006 MT 100, ¶ 34, 332 Mont. 130, 136 P.3d 507.
¶15 In Montana, exceptions to mandatory minimum sentences-much like sentencing alternatives-are strictly a matter of statute. Compare § 46-18-222, MCAwith § 46-18-225, MCA ; see Shults , ¶ 34. Our review of mandatory minimum sentence exceptions requires us to analyze whether the district court correctly applied the statute. See Shults , ¶ 34. Sections 46-18-222 and -223, MCA, require a district court judge to determine whether to apply a mandatory minimum sentence exception based on "a preponderance of the information, including information submitted during the trial, during the sentencing hearing, and in so much of the presentence report as the court relies on." Section 46-18-223(3), MCA. Thus, a district court's application of the statute requires it to make findings of fact, which we review to determine whether they are clearly erroneous. Shults , ¶ 34. Findings of fact are clearly erroneous "if they are not supported by substantial evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has ***109 been made." *855 State v. Warclub , 2005 MT 149, ¶ 23, 327 Mont. 352, 114 P.3d 254 (citing State v. Eixenberger , 2004 MT 127, ¶ 13, 321 Mont. 298, 90 P.3d 453 ).
DISCUSSION
¶16 1. Did Hamilton waive his statutory vagueness claims by failing to raise them before trial?
¶17 Under § 46-13-101(1), MCA, a party must raise "any defense, objection, or request that is capable of determination without trial of the general issue" at or before the omnibus hearing unless good cause is shown. Failure to do so constitutes a waiver of the defense, objection, or request. Section 46-13-101(2), MCA. Similarly, a party generally must timely raise "[a] claim alleging an error affecting jurisdictional or constitutional rights," like an objection to jury instructions, or else the party waives the claim. Sections 46-20-104 and -701, MCA ; State v. Baker , 2000 MT 307, ¶¶ 29-30, 302 Mont. 408, 15 P.3d 379. We have previously stated that, above all else, "the rationale underlying the timely-objection rule is judicial economy and 'bringing alleged errors to the attention of each court involved, so that actual error can be prevented or corrected at the first opportunity.' " State v. West , 2008 MT 338, ¶ 17, 346 Mont. 244, 194 P.3d 683 (quoting City of Missoula v. Asbury , 265 Mont. 14, 20, 873 P.2d 936, 939 (1994) ). Barring limited exceptions, we will not review waived claims on appeal. Section 46-20-701(2), MCA.
¶18 Hamilton alleges that the language defining "sexual contact" in § 45-2-101(67)(a), MCA, is unconstitutionally vague. His challenge goes both to the heart of his original charges and the jury instruction the District Court used to define "sexual contact" at trial.
¶19 A statute may be challenged for vagueness under two theories: (1) the statute is so vague as to be rendered void on its face, and (2) the statute is vague as applied in a particular case. State v. Nye , 283 Mont. 505, 513, 943 P.2d 96, 101 (1997) (citing State v. Martel , 273 Mont. 143, 149, 902 P.2d 14, 18 (1995) ). Hamilton challenges the statute under both theories. We hold that these objections to his original charges under each theory, however, were "capable of determination without trial of the general issue." Section 46-13-101(1) - (2), MCA. We similarly hold that he waived any statutory vagueness objection to his jury instruction defining "sexual contact" when he failed to timely raise it during trial. Section 46-20-104, MCA.
¶20 A statute is unconstitutionally vague and void on its face if "it fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden."
***110 State v. Brogan , 272 Mont. 156, 168, 900 P.2d 284, 291 (1995) (quoting State v. Crisp , 249 Mont. 199, 202, 814 P.2d 981, 983 (1991) ). A statute is unconstitutionally vague as applied to a defendant if: (1) it fails to provide "actual notice" to the defendant, or (2) it fails to provide "minimal guidelines" to law enforcement regarding the defendant's conduct. State v. Watters , 2009 MT 163, ¶ 32, 350 Mont. 465, 208 P.3d 408 ; State v. Dixon , 2000 MT 82, ¶¶ 27-31, 299 Mont. 165, 998 P.2d 544. A statute challenged for vagueness as applied to a particular defendant "must be examined in light of the conduct with which the defendant is charged in order to determine whether the defendant could have reasonably understood that his conduct was proscribed." Dixon , ¶ 28. To determine whether the statute provides minimal guidelines to law enforcement regarding the defendant's conduct, a court must establish whether the guidelines are sufficient "to prevent arbitrary and discriminatory enforcement...." Dixon , ¶ 31.
¶21 We conclude that Hamilton's objections to his charges under both theories of vagueness were questions of law "capable of determination" by the District Court prior to trial. Section 46-13-101, MCA ; see State v. Griffing , 1998 MT 75, ¶ 10, 288 Mont. 213, 955 P.2d 1388. When he objected to his jury instructions under the same theories, his objections were claims of error affecting his constitutional rights that must have been timely made during trial. Sections 46-20-104 ; -701, MCA. First, Hamilton's facially-vague objection would have asked the District Court to determine whether the statute was so vague as to be void on its face. Second, Hamilton's vague-as-applied objection would have required the District Court *856 to: (1) determine whether the statute provides constitutionally adequate notice by examining the statute in light of the conduct with which Hamilton was charged in order to ascertain whether he could have reasonably understood that his conduct was proscribed; and (2) determine whether the statute provides law enforcement with sufficient guidelines to prevent arbitrary and discriminatory enforcement regarding Hamilton's conduct. Each objection would have presented a question of law.
¶22 We emphasize that a vague-as-applied constitutional challenge requires a district court to evaluate the statute "in light of the conduct with which the defendant is charged ." Dixon , ¶ 28 (emphasis added). A district court need not wait until a trial that establishes findings of fact to analyze whether a statute is unconstitutionally vague as applied. Instead, the analysis is a question of law that may be resolved before trial. See , e.g. , Watters , ¶¶ 17-18 (taking supervisory control over a case involving a vague-as-applied constitutional challenge because the challenge involved "purely legal questions").
***111 ¶23 Hamilton waived his statutory vagueness objections because they presented questions of law that were "capable of determination without trial of the general issue." See § 46-13-101, MCA. Hamilton likewise failed to make a timely statutory vagueness objection to the jury instruction defining "sexual contact" when he raised the issue for the first time in his postconviction motion to dismiss. See § 46-20-104. We would, however, like to clarify these issues: although the basis for Hamilton's statutory vagueness objection was apparent before his omnibus hearing, his failure to raise the issue there did not necessarily preclude him from objecting to his jury instructions on the same grounds later. A jury instruction is clearly not a "defense, objection, or request capable of determination without trial of the general issue." See § 46-13-101, MCA. Our holding today does not foreclose the possibility of raising a statutory vagueness objection to jury instructions when a court adopts final instructions, but neither does it prevent a court from determining that the underlying arguments behind the objection are untimely. Nevertheless, Hamilton had already waived each of these objections when he raised them for the first time in his postconviction motion to dismiss. Therefore, under the plain language of §§ 46-13-101 and 46-20-104, MCA, each of the objections Hamilton raised for the first time in his motion to dismiss were untimely. See Griffing , ¶ 12. We conclude that Hamilton waived them.
¶24 In his reply brief, Hamilton also asserts that, although the State objected to the timeliness of his motion to dismiss, when the District Court nonetheless held an evidentiary hearing prior to sentencing, it was "thereby rejecting the State's procedural arguments." Hamilton asserts that the District Court impliedly overruled the State's timeliness argument when it considered his post-trial motions and made a record for appeal.
¶25 We have never held that a district court effectively grants relief to a party for a claim waived pursuant to § 46-13-101, MCA, by holding an evidentiary hearing about the waived claim. Although a district court may, for cause shown, grant such relief, holding an evidentiary hearing does not force its hand: "[A] district court retains the authority to control the progress of the case, and may, within its discretion, grant or deny the requested relief, as it deems appropriate." State v. VonBergen , 2003 MT 265, ¶ 21, 317 Mont. 445, 77 P.3d 537. Furthermore, a district court may, in its discretion, determine that a hearing is necessary to establish whether cause for granting relief exists. Section 46-13-101(3), MCA. If the district court finds none, it may hold that a motion is time-barred under § 46-13-101(1), MCA.
¶26 The District Court held a hearing on Hamilton's motion to dismiss ***112 before sentencing. After allowing one of the jurors from Hamilton's trial to testify, the District Court heard an oral argument from Hamilton, and the State deferred to its brief on the issue. Ultimately, the District Court denied Hamilton's motion for two reasons. First, the District Court did not find that the juror's testimony indicated a deficiency with the definition of "sexual contact" in the jury instructions:
*857 I think it was more prompted by the fact that [the juror] realized the penalty was more severe than she thought it was at the time she made the decision. I think her hindsight, you know, that she doesn't like the verdict isn't a basis for setting aside the verdict.
Second, the District Court declined to grant relief to Hamilton for waiving his statutory vagueness argument:
In addition, we have the time limitation, and I recognize I could waive that. But I think your brief said you learned about it October 10th, but you didn't file your motion until November 18th, and I recognize you guys are overworked and behind also.
¶27 We find nothing in the record that indicates the District Court granted Hamilton relief for failing to timely raise his statutory vagueness or jury instruction objections. Quite the opposite, the motion's tardiness was one of the reasons the District Court gave for denying it. By holding the hearing, the District Court acted within its "authority to control the progress of the case" and "within its discretion" to "grant or deny the requested relief, as it deem[ed] appropriate." VonBergen , ¶ 21.
¶28 Finally, Hamilton urges us to find that his post-trial jury instruction objection is reviewable on appeal because it was made "during trial" as we defined the term in State v. Reichmand , 2010 MT 228, 358 Mont. 68, 243 P.3d 423. Although Reichmand involved the issue of whether to apply new criminal procedure rules retroactively, Hamilton posits that the procedural posture between this case and Reichmand are similar, and he asks us to apply our definition of "during trial" from Reichmand here. Regardless of the phase of criminal proceedings Hamilton raised his objection in, we hold that it was untimely.
¶29 Section 46-20-104(2), MCA, states that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection...." In Reichmand , after trial but before Reichmand's sentencing, we decided State v. Goetz , 2008 MT 296, 345 Mont. 421, 191 P.3d 489, which-had Goetz existed before Reichmand's trial-would have rendered evidence at the heart of the State's case inadmissible. Reichmand , ¶¶ 3-5. In our opinion, we noted how §§ 46-20-104(2) and -701(2)(a), MCA, greatly ***113 restrict appellate review "unless objections are made 'at the time of trial' or 'during trial,' respectively." Reichmand , ¶ 8 (quoting §§ 46-20-104(2) and -701(2)(a), MCA ). We explained that "during trial" in the context of § 46-20-104(2), MCA, encompassed "the entire proceeding in the lower court." Reichmand , ¶ 8. This definition aided us in analyzing whether defendants were "similarly situated"-a retroactivity-specific requirement-in order to determine whether a new rule of criminal procedure should be retroactively applied. See Reichmand , ¶¶ 5-12.
¶30 Hamilton argues that our definition of "during trial" in Reichmand should extend to "the entire proceeding in the lower court" in his case. He points specifically to the following statement we made in Reichmand : "Where the trial court was given an opportunity to rule on the issue, as here, then the objection has been made 'at trial' and the defendant has properly preserved the issue for review by this Court." Reichmand , ¶ 9 (emphasis in original) (citing State v. Waters , 1999 MT 229, ¶ 24, 296 Mont. 101, 987 P.2d 1142 ).
¶31 Section 46-20-104(2), MCA, requires an objection to an alleged error to be made "during trial," but finding such does not necessarily complete our analysis-objections must also be "timely." We have a longstanding rule that objections must be made as soon as the grounds for them become apparent. Reichmand , ¶ 9 n.1 (citing State v. McWilliams , 2008 MT 59, ¶ 45, 341 Mont. 517, 178 P.3d 121 ; State v. Misner , 2007 MT 235, ¶ 24, 339 Mont. 176, 168 P.3d 679 ; State v. Grace , 2001 MT 22, ¶ 35, 304 Mont. 144, 18 P.3d 1008 ). In the context of Reichmand and other cases where the retroactive application of new criminal procedure rules are at issue, objections may be timely when the grounds for the objection-the issuance of a new rule-were not apparent until after the verdict. Thus, if a defendant argues that a new criminal procedure rule should be retroactively applied, in some cases that objection may be raised post-verdict, but the objection *858 is not timely if the defendant fails to make the objection as soon as the grounds for it become apparent. Reichmand , ¶ 9 n.1.
¶32 Unlike Reichmand , Hamilton does not ask that a new criminal procedure rule be retroactively applied, and the grounds for Hamilton's objection were apparent before he raised it postconviction. Accordingly, Hamilton waived the statutory vagueness defenses to his charges when he failed to raise them before his omnibus hearing, and he waived any similar objection to his jury instructions when he failed to object contemporaneously.
¶33 2. Did Hamilton waive his objections to the District Court's sentence by failing to raise them below?
***114 ¶34 We reiterate that as a general rule, we will not review issues on appeal if the party raising the issue did not object below. State v. Lewis , 2012 MT 157, ¶ 27, 365 Mont. 431, 282 P.3d 679. As an exception to this rule, in State v. Lenihan , we explained that an appellate court may review a sentence for legality, even if not objected to below, if a party alleges that the sentence is illegal or exceeds statutory mandates. 184 Mont. 338, 343, 602 P.2d 997, 1000 (1979). "A sentence is not illegal when it is within the parameters provided by statute." Garrymore , ¶ 9. We also review a sentence when a defendant alleges that the sentence violates his constitutional or statutory rights. Lewis , ¶ 30 ; Garrymore , ¶¶ 10-5. Where a sentence is merely objectionable, we have declined to apply the Lenihan exception. Lewis , ¶ 31 ; State v. Kotwicki , 2007 MT 17, ¶ 22, 335 Mont. 344, 151 P.3d 892. Nevertheless, we review a district court's findings of fact supporting its sentence to determine whether they are clearly erroneous. Shults , ¶ 34.
¶35 In Kotwicki , as part of a sentence for numerous drug-related convictions, the district court ordered Kotwicki to pay a $25,000 fine, which fell within the court's statutory authority to impose up to a $50,000 fine. Kotwicki , ¶¶ 3-4. On appeal, Kotwicki argued that his sentence was illegal because the district court failed to make specific findings as required by § 46-18-231(3), MCA, on Kotwicki's financial resources before imposing the fine. Kotwicki , ¶ 7. We declined to review the sentence, however, because the court's failure to make specific findings rendered the sentence objectionable, but not illegal. Kotwicki , ¶ 21.
¶36 Likewise, in Lewis , the district court imposed a sentence that restricted Lewis's eligibility for parole, but it failed to state specific reasons for the restriction as required by § 46-18-202(2), MCA. Lewis never objected to his sentence for this reason, and he raised the issue for the first time on appeal. Lewis , ¶ 7. Accordingly, we refused to review it. Lewis , ¶¶ 26, 30-31.
¶37 Hamilton does not allege that his sentence is illegal because it exceeds the statutory parameters or is otherwise violative of his constitutional and statutory rights. Instead, Hamilton appeals his sentence under two theories: (1) that the District Court failed-as required by § 46-18-223, MCA -to find by a preponderance of the evidence whether an exception to his sentence applied and to state its reasons in writing; and (2) that the District Court "prejudged" his sentence, abusing its discretion. Hamilton failed to object to the District Court's sentence under either theory, however, so he is precluded from raising the issues for the first time on appeal.
¶38 Section 46-18-223(3), MCA, provides that when the ***115 application of a § 46-18-222, MCA, exception to a mandatory sentencing requirement is at issue:
If it appears by a preponderance of the information, including information submitted during the trial, during the sentencing hearing, and in so much of the presentence report as the court relies on, that none of the exceptions at issue apply, the court shall impose the appropriate mandatory sentence. The court shall state the reasons for its decision in writing and shall include an identification of the facts relied upon in making its determination. The statement shall be included in the judgment.
Section 46-18-223(1), (3), MCA ; see State v. Tucker , 2000 MT 255, ¶ 14, 301 Mont. 466, 10 P.3d 832. If a sentencing court fails to follow the statute, the defendant must bring the allegations of sentencing errors to the court's attention in a timely fashion. Tucker , ¶ 15 *859 (citing State v. Swoboda , 276 Mont. 479, 481, 918 P.2d 296, 298 (1996) ).
¶39 In State v. Sprinkle , 2000 MT 188, 300 Mont. 405, 4 P.3d 1204, we reviewed the requirements of § 46-18-223, MCA, where a sentencing court failed to state in writing its refusal to apply a mandatory minimum sentence exception under § 46-18-222, MCA. Sprinkle pleaded guilty to the criminal sale of dangerous drugs which carried a minimum sentence of twenty years imprisonment at the time. He asked the district court to apply § 46-18-222(4), MCA, which granted an exception to mandatory minimum sentences if the offender was an accomplice and his participation was "relatively minor." During Sprinkle's sentencing hearing, while the district court declined to apply the exception, it failed to give any factual basis for finding that Sprinkle was not an accomplice in the crime or that his participation was not "relatively minor." Sprinkle , ¶ 9 ; see § 46-18-222(4), MCA. Moreover, after the sentencing hearing, the district court failed to give a written factual basis for declining to apply the exception in its written judgment. Sprinkle , ¶ 11. Sprinkle never objected during the sentencing hearing or after the written judgment. Sprinkle , ¶¶ 4-5, 9. Nevertheless, we held that without any factual findings from the district court, we had no basis upon which to review the judgment. Sprinkle , ¶ 11. Therefore, we remanded the case to the district court with specific instructions to enter findings of fact to support its conclusion that § 46-18-222(4), MCA, did not apply to Sprinkle's case. Sprinkle , ¶ 12.
¶40 Mere months after Sprinkle , we reviewed the requirements of § 46-18-223, MCA, once again in Tucker . Tucker pleaded guilty to attempted aggravated assault, which carried an additional minimum sentence of two years imprisonment because Tucker had used a ***116 dangerous weapon-a knife-while carrying out the offense. Tucker , ¶¶ 4-5 ; see § 46-18-221(1), MCA. Tucker asked the district court to apply a mandatory minimum sentence exception under § 46-18-222(4), MCA, which provided for an exception where "the offender ... was acting under unusual and substantial duress" at the time of the offense. Tucker , ¶ 6. During Tucker's sentencing hearing, the district court weighed the evidence regarding Tucker's mental state and found that he was not acting under unusual and substantial duress at the time of his offense. It therefore declined to apply the exception. Tucker , ¶ 7. Tucker never objected to the district court's findings during his sentencing hearing, and he never objected after the hearing when the district court failed to issue findings of fact in its written judgment. Tucker , ¶ 8. On appeal, we concluded that Tucker had failed to preserve the issue: "We refuse to remand for resentencing when a defendant failed to bring the allegations of sentencing errors to the district court's attention in a timely fashion." Tucker , ¶ 15 (internal citations omitted). We also distinguished Tucker from Sprinkle , finding that unlike the record in Sprinkle , the record in Tucker provided us with the district court's factual basis for refusing to apply a mandatory minimum sentence exception. Tucker , ¶ 12.
¶41 Hamilton's case is factually similar to Tucker . Due to Hamilton's and his victim's ages at the time of his offenses, Hamilton's conviction of incest carried a mandatory minimum sentence of 100 years imprisonment. Section 45-5-507(5)(a), MCA (2009 and 2011). Hamilton asked the District Court to find that an exception to the mandatory minimum sentence applied through § 46-18-222(6), MCA. Specifically, the statute provided for an exception to Hamilton's minimum sentence if
the judge determines, based on the findings contained in a psychosexual evaluation report prepared by a qualified sexual offender evaluator ..., that treatment of the offender while incarcerated, while in a residential treatment facility, or while in a local community affords a better opportunity for rehabilitation of the offender and for the ultimate protection of the victim and society....
Section 46-18-222(6), MCA.
¶42 The District Court reviewed the psychosexual evaluation report and found that an alternative sentence, while it may have provided Hamilton a better opportunity for rehabilitation, did not provide for a better opportunity for the ultimate protection of *860 Hamilton's victim and society. When evaluating Hamilton's proposed sentencing exception, the District Court considered the Pre-Sentence Investigation Report, ***117 the Psychosexual Evaluation Report, the facts of the case, a statement from the victim, testimony from Officer Hides and Dr. Scolatti, arguments from the State and the defense, and the relevant sentencing statutes. Unlike Sprinkle , the record clearly shows that the District Court made findings of fact that led to its decision not to apply the mandatory minimum sentence exception to Hamilton's case.
¶43 Hamilton failed to object to whether the District Court's findings were adequate, and he failed to object again after the District Court neglected to reduce its findings to writing in its judgment, waiving both claims. Following similar logic, we make the same conclusion about Hamilton's claim that the District Court "prejudged" his sentence-Hamilton waived it when he failed to object below. Therefore, we decline to review his claims for the first time on appeal. See Lewis , ¶ 31 ; Kotwicki , ¶ 22. Instead, we confine our analysis to: (1) whether Hamilton's sentence was illegal or outside the statutory parameters; and (2) whether the District Court's underlying factual findings supporting Hamilton's sentence and its decision not to apply an exception were clearly erroneous. See Garrymore , ¶ 9 ; Shults , ¶ 34.
¶44 First, Hamilton's sentence clearly fits within the statutory parameters. At the time of Hamilton's offenses, § 45-5-507(5)(a), MCA (2009 and 2011), provided the following sentence for a conviction of incest:
(5)(a) If the victim was 12 years of age or younger and the offender was 18 years of age or older at the time of the offense, the offender: (i) shall be punished by imprisonment in a state prison for a term of 100 years. The court may not suspend execution or defer imposition of the first 25 years of a sentence of imprisonment imposed under this subsection (5)(a)(i) except as provided in 46-18-222, and during the first 25 years of imprisonment, the offender is not eligible for parole.
Hamilton's and his victims ages are not in dispute. The District Court sentenced Hamilton to 100 years of imprisonment with 75 years suspended and parole ineligibility for the first 25 years for both of his convictions. This sentence is neither illegal nor exceeding the statutory parameters.
¶45 Second, we review the District Court's factual findings for clear error. While Hamilton waived any objection to the inadequacy of the District Court's factual findings, we must still review those findings to determine if they were clearly erroneous. See Shults , ¶ 34. We turn first to a statement made by the District Court that Hamilton referred to numerous times in his appellate briefs: "So when I look at these things, I have to not only protect society, but I have to protect society ***118 from you which benefits you also. So as far as I'm concerned, with sex offenders, where the maximum penalty is 100 years, we're going to do 100 years every single time." The District Court's statement here, if read alone, would indicate the Court ignored the facts of Hamilton's case when issuing his sentence and deciding whether to apply the mandatory minimum sentence exception. It would indicate that the Court's factual findings were clearly erroneous. See Warclub , ¶ 23. In our analysis, however, we decline to read the statement in a vacuum. See , e.g. , State v. Humphrey , 2008 MT 328, ¶ 20, 346 Mont. 150, 194 P.3d 643 (reading a district court's statements "in context" with the record to ascertain their meaning).
¶46 Unlike many other sentencing statutes-including other sections of Montana's incest sentencing statute-§ 45-5-507(5)(a), MCA (2011), states a precise sentence for offenses that fall under its purview: "imprisonment in a state prison for a term of 100 years." See , e.g. , § 45-5-507(3), MCA ("[A] person convicted of incest shall be punished by life imprisonment or by imprisonment in the state prison for a term not to exceed 100 years ....") (emphasis added); § 45-5-507(4), MCA (stating that if certain age requirements are met between the offender and victim, or if the offender inflicts bodily injury upon anyone while committing incest, "the offender shall be punished by life imprisonment or by imprisonment in the state prison for a term of not less than 4 years or more than 100 years ....") (emphasis added). In *861 other words, while other sentencing statutes provide for a range of penalties, § 45-5-507(5)(a), MCA (2011), provides the sentencing court with no other options unless it finds that an exception to the minimum statutory sentence applies. The District Court pointed this out during Hamilton's sentencing hearing: "This is the incest statute, right here is the penalty if the victim is under 12 years of age. It's really different than most penalties, most sex offense penalties. For instance, you know, it doesn't have it up to 100 years, it just says 100 years."
¶47 We raise this point to give context to the District Court's statement-without an exception, this statute does, in fact, require the District Court to sentence an offender to "100 years [of imprisonment] every single time." Moreover, the record indicates the District Court weighed the evidence, seriously and substantially considering whether the exception should be applied:
You know, although Dr. Scolatti said the exception applied, it didn't track in my mind. You know, I understand the part about getting the treatment and I understand those things, but I don't know that it's better for society. Although, I had a long talk with myself both before today, because I look at the end of the 25 years, ***119 when you get out on parole, whether you will be a better person or not, so when you look at the big, big, big picture, are we doing a better thing for society or not? I just can't quite carry myself to say that that's the appropriate thing to do. You know, there is a balancing act.
¶48 Therefore, we hold that the District Court's findings of fact supporting Hamilton's sentence and its decision not to apply an exception were not clearly erroneous. While the District Court's statement that "we're going to do 100 years every single time" weighs against this conclusion, when reviewing the record in its entirety, the Court's findings of fact were not clearly erroneous. Hamilton's sentence fits within the statutory parameters. Accordingly, we affirm Hamilton's sentence.
¶49 3. Did the District Court err when it issued a written judgment that conflicted with its oral pronouncement of the sentence?
¶50 "Separate sentences for two or more offenses must run consecutively unless the court otherwise orders." Section 46-18-401, MCA. We have long held that a district court's oral pronouncement of a criminal sentence "is the 'legally effective sentence and valid, final judgment.' " State v. Thompson , 2017 MT 107, ¶ 8, 387 Mont. 339, 394 P.3d 197 (citing State v. Johnson , 2000 MT 290, ¶ 15, 302 Mont. 265, 14 P.3d 480 (quoting State v. Lane , 1998 MT 76, ¶ 40, 288 Mont. 286, 957 P.2d 9 ) ). The State concedes that the oral and written sentences conflict and that remand is necessary to confirm the written judgment.
¶51 We take this opportunity, however, to distinguish and explain review of a conflicting written judgment and oral pronouncement from the other sentencing issues in this case which we have determined are waived. Two considerations are involved when we review a conflicting written judgment and oral pronouncement of sentence: (1) whether the defendant was afforded an adequate opportunity to respond to the additional portions of the sentence; and (2) whether the additional portions of the written judgment substantively increase either the defendant's loss of liberty or the defendant's sacrifice of property. Johnson , ¶ 8. We will review these conflicts, even where the defendant never objected to them below, because when a court's written judgment conflicts with its oral pronouncement of a sentence, were the written judgment to control, then the defendant would effectively be "sentenced in absentia , violating his statutory right to be present...." Lane , ¶ 33. As such, "in the event of a conflict between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement controls." Lane , ¶ 48.
¶52 At Hamilton's sentencing hearing, the District Court orally ***120 pronounced that Hamilton's sentences would run concurrently. The District Court's written judgment following the sentencing hearing was silent on the matter. Where the judgment is silent, § 46-18-401, MCA, compels sentences for multiple *862 offenses to run consecutively. Hamilton was never afforded the opportunity to respond to the increased sentence, which was essentially imposed in absentia in violation of his right to be present. The District Court's written and oral judgments conflict and we therefore remand this case to the District Court with instructions to amend its written judgment to indicate the sentences will run concurrently.
CONCLUSION
¶53 Hamilton's sentences are affirmed, except that we reverse and remand for the District Court to correct the written judgment to reflect the sentences will run concurrently.
We concur:
MIKE McGRATH, C.J.
JAMES JEREMIAH SHEA, J.
BETH BAKER, J.
JIM RICE, J.