FILED

11/02/2021

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 20-0246

DA 20-0246

IN THE SUPREME COURT OF THE STATE OF MONTANA

2021 MT 286N

STATE OF MONTANA,

Plaintiff and Appellee,

v.

NATHAN EDWARD ANDERSON,

Defendant and Appellant.

APPEAL FROM:      District Court of the Seventeenth Judicial District,
In and For the County of Valley, Cause No. DC 2018-38
Honorable Olivia Rieger, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

Russ Hart, Netzer Law Office, PC, Billings, Montana

For Appellee:

Austin Knudsen, Montana Attorney General, Bree Gee, Assistant Attorney
General, Helena, Montana

Dylan Jensen, Valley County Attorney, Glasgow, Montana

Submitted on Briefs:  May 12, 2021

Decided:  November 2, 2021

Filed:

_____
Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition shall be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Nathan Edward Anderson appeals his 100-year sentence, with 60 years suspended, to the Montana State Prison (MSP) imposed under his April 2020 judgment of conviction for incest, a felony in violation of § 45-5-507, MCA, in the Montana Seventeenth Judicial District Court, Valley County. Anderson asserts that the District Court erroneously determined that neither of the exceptions specified by § 46-18-222(2)-(3), MCA, applied to the restrictions on deferred imposition of sentences, suspended sentences, and parole eligibility specified by § 45-5-507(5)(a)(i), MCA. We affirm.

¶3    Between January 2016 and November 2018, Anderson, then in his early 30's, regularly subjected his stepdaughter to sexual contact between the ages of six and nine years old. In the evenings, Anderson would often go down to his stepdaughter's basement bedroom in the family home in Glasgow, Montana, where he would lay down in bed with her, often while she slept, and massage her genitals and buttocks atop and beneath her clothing. Over time, the contact escalated to Anderson frequently performing oral sex upon her genitals. Afterward, he would often masturbate in the downstairs bathroom before returning upstairs to the company of his wife (Mother). On December 10, 2018, the young girl reported to Mother that Anderson had "put his mouth between her legs." Mother

2

immediately confronted Anderson, who admitted that the sexual interactions had been ongoing for a couple years. On December 14, 2018, Mother reported the alleged sexual abuse to Glasgow police and the stepdaughter confirmed the abuse in a forensic interview with a specialist. When questioned by police, Anderson confessed in writing to sexually abusing his stepdaughter as alleged.

¶4 On December 27, 2018, the State charged Anderson with separate counts of incest and felony sexual assault in violation of § 45-5-502, MCA. After pleading not guilty and later undergoing separate defense-commissioned psychological and psychosexual evaluations, Anderson entered into a plea agreement with the State under which he later pled guilty to incest in return for dismissal of the sexual assault charge and a particular sentencing recommendation from the State. Pursuant to § 45-5-507(5)(a)(i), MCA (2017), incest carried a mandatory 100-year term of commitment to the MSP, with no eligibility for deferred imposition of sentence, suspended sentence, or parole for the first 10 years except as otherwise provided under § 46-18-222(1)-(5), MCA. The plea agreement called for the State to recommend a 100-year MSP sentence, with 60 years suspended, with the defense free to recommend a lesser sentence.

¶5 The Department of Corrections presentence investigation report required by §§ 46-18-111 and -112, MCA, and a subsequent addendum included, *inter alia*, the reports of the defense-commissioned psychological and psychosexual evaluations respectively conducted by Dr. Bruce Chessen, Ph.D., and Michael Sullivan, LCSW, as well as the report of a State-commissioned psychological evaluation conducted by Dr. Dee Woolston, Ph.D.

In addition to the charged and admitted sexual misconduct at issue, an addendum to the psychosexual evaluation referenced additional admitted incidents of sexual misconduct committed by Anderson against other female relatives that came to light during his parallel-pending marital dissolution proceeding. Based on Anderson's admissions to the charged and subsequently discovered incidents of sexual misconduct against female relatives, the psychosexual evaluator ultimately recommended that the court designate Anderson as a Level 2 sex offender, moderate risk to re-offend.[1]

¶6 On the basis of the harm and related sexual impulses caused by the multiple incidents of sexual abuse committed against him at an early age by various family members, and opinions stated in the respective psychological evaluation reports of Drs. Chessen and Woolston, Anderson asserted in a pre-sentencing memorandum that § 46-18-222(3), MCA ("unusual and substantial duress" exception), applied in this case to the mandatory sentence, and related restrictions, for incest. Anderson's sentencing memorandum included, *inter alia*, an attached sealed "Report to the Court" filed in the 1991 proceeding to terminate the parental rights of his biological parents following his 1989 removal due to sexual abuse at age four, and which ultimately resulted in his permanent placement with an adoptive family at age seven. The 1991 report, considered by all three of his psychological and psychosexual evaluators in 2019, detailed the various incidents and circumstances of the prior sexual abuse and neglect to which Anderson was

---

[1] *See* §§ 46-18-111(1)(b) and 46-23-509(2)-(3), MCA (required psychosexual evaluation and risk-tier designation of sex offenders).

subjected as a young child. At sentencing, on direct examination by defense counsel, Dr. Chessen opined that Anderson engaged in the charged sexual misconduct as a "compulsion" caused by his early childhood sexualization and resulting "urge" and "impulse" for sexual contact. Chessen acknowledged on cross-examination, however, that his opinion was "psychologically . . . rather than legally based." Though he testified that Anderson's resulting sexual urges and impulses constituted "a form of duress," Dr. Chessen nonetheless acknowledged that, despite Anderson's "confused emotions," his thinking was "clear and coherent" with no indication of incompetency, irrational thought, or psychosis, and that his "mental capacity," cognitive abilities, and understanding of right and wrong were not diminished at the time of the charged offense.

¶7 Dr. Woolston similarly characterized Anderson's sexually deviant behavior as a "compulsion," but stopped short of asserting that he "could not stop it." Woolston testified that the primary cause of Anderson's "stress" was his sexually deviant behavior itself, i.e., his anxiety and fear of the consequences of "getting caught." After the court apprised him of the statutory definition of "compulsion," Woolston explained that he referred to "compulsion" only in the "medical sense"—as in harmful addictive behaviors that are difficult to stop—and thus denied that Anderson was under any "kind of external pressure." Contrary to Dr. Chessen's opinion, when asked by defense counsel on redirect whether he thought Anderson was under an "unusual amount of duress" at the time of the charged offense, Dr. Woolston answered, "I would say no."

¶8    Based on his sentencing memorandum, and the supplemental testimony of Drs. Chessen and Woolston, Anderson asserted that the exception of § 46-18-222(3), MCA, applied, and thus recommended that the court sentence him to the 100-year mandatory sentence for incest with the entire term suspended.  The District Court found, however, that the exception did not apply and instead sentenced Anderson to a 100-year term of commitment to MSP, with 60 years suspended, and no parole eligibility for 10 years.  Anderson timely appeals.

¶9    Sentencing courts may deviate from mandatory sentences, certain "restrictions on deferred imposition and suspended execution of sentences," and certain "restrictions on parole eligibility" upon application of various statutory exceptions.  Section 46-18-222, MCA.  As pertinent here, a sentencing court may deviate from the restrictions on the deferred imposition of sentences, suspended sentences, and parole eligibility specified by § 45-5-507(5)(a)(i), MCA, upon a finding that, at the time of commission of the offense, the offender "was acting under unusual and substantial duress," even if not sufficient to "constitute a defense" to the charge.  Sections 45-5-507(5)(a)(i) and 46-18-222(3), MCA.  The defendant has the burden of timely raising and demonstrating the applicability of a § 46-18-222 exception by a "preponderance of the information, including information submitted during the trial, during the sentencing hearing, and in so much of the presentence report as the court relies on."  *See* § 46-18-223(1) and (3), MCA.  We review lower court interpretations and applications of §§ 46-18-222 and -223(1), MCA, de novo for correctness.  *State v. Hamilton*, 2018 MT 253, ¶ 15, 393 Mont. 102, 428 P.3d 849; *State v.*

6

*Webb*, 2005 MT 5, ¶ 8, 325 Mont. 317, 106 P.3d 521. We review lower court findings under § 46-18-223(3), MCA, regarding the factual bases for the § 46-18-222 exceptions only for clear error. *Hamilton*, ¶ 15. *See also State v. Sprinkle*, 2000 MT 188, ¶ 11, 300 Mont. 405, 4 P.3d 1204 (noting that § 46-18-223, MCA, requires sufficient findings of fact regarding the pertinent factual bases for the § 46-18-222 exceptions).

¶10    Here, at sentencing, the District Court noted that § 46-18-222(3), MCA, requires proof of unusual duress and found that, based on his "own words," Anderson "knew what [he was] doing, . . . knew it was wrong," didn't "know why [he] did it," and didn't "remember a lot of the abuse that [he] underwent."[2] The record further reflects that the testimony of Drs. Woolston and Chessen was not in accord as to whether and to what extent, if any, Anderson was in fact acting under extraordinary duress at the time of commission of the subject offense as a result of his history as a victim of sexual abuse. Indeed, Dr. Woolston testified unequivocally to the contrary. Even Dr. Chessen's testimony, the most supportive of Anderson's assertion, was less than unequivocal.

¶11    The record manifests that, as required by § 46-18-223, MCA, the court duly considered all record information pertinent to the asserted unusual duress exception. The court's subsequent written judgment further set forth the "reasons for its decision,"

---

[2] Anderson's sentencing memorandum and hearing assertions of an applicable mandatory sentence exception under § 46-18-222, MCA, exclusively focused on the § 46-18-222(3) exception without reference to the § 46-18-222(2) exception for "significantly impaired" mental capacity or any other -222 exception. The District Court nonetheless *sua sponte* found that neither the asserted -222(3) unusual duress exception, nor any of the -222 exceptions, applied here. We will thus not address Anderson's after-the-fact assertion, raised for the first time on appeal, that the § 46-18-222(2) "significantly impaired" mental capacity exception also or alternatively applied here.

including "identification of the facts relied upon," as further required by § 46-18-223(3), MCA. Most significantly, the court's oral and written factual findings and reasoning were supported by substantial record information, which our review of the record indicates that the court neither misapprehended, nor was otherwise mistaken. We hold that the District Court did not erroneously determine that the asserted unusual duress exception under § 46-18-222(3), MCA, did *not* apply to the restrictions on deferred imposition of sentences, suspended sentences, and parole eligibility specified by § 45-5-507(5)(a)(i), MCA.

¶12 Pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, we decide this case by memorandum opinion. Affirmed.

/S/ DIRK M. SANDEFUR

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE