FILED

12/17/2024

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0714

DA 22-0714

IN THE SUPREME COURT OF THE STATE OF MONTANA

2024 MT 306

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

HEATHER ROSE JOHNSON,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Twenty-First Judicial District,
In and For the County of Ravalli, Cause No. DC 21-24
Honorable Jennifer B. Lint, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Tammy Hinderman, Appellate Defender, Charlotte Lawson, Assistant
          Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Thad Tudor, Assistant
          Attorney General, Helena, Montana

          William E. Fulbright, Ravalli County Attorney, Angela Wetzsteon, Deputy
          County Attorney, Hamilton, Montana

                Submitted on Briefs:  August 21, 2024

                       Decided:  December 17, 2024

Filed:

                        _____
                              Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1 Defendant and Appellant Heather Rose Johnson (Johnson) appeals from the October 25, 2022 Judgment and Commitment issued by the Twenty-First Judicial District Court, Ravalli County. The court's judgment followed Johnson's convictions for assault on a peace officer, driving under the influence, driving while suspended or revoked, and expired registration after an August 8-9, 2022 jury trial.

¶2 We address the following restated issues on appeal:

*1. Whether the District Court violated Johnson's right to confront witnesses against her under the United States and Montana Constitutions by admitting the 911 call in its entirety at trial and, if so, whether such error was harmless.*

*2. Whether the District Court's written judgment imposing an "Audit Hearing" condition conflicts with its oral pronouncement of sentence.*

¶3 We determine the admission of the 911 call in its entirety violated Johnson's confrontation right, but that the State has met its burden of demonstrating the error was harmless. We therefore affirm Johnson's convictions and remand for the District Court to strike the condition of Johnson's judgment requiring her to attend an "Audit Hearing" on January 29, 2026.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶4 On January 24, 2021, Johnson and a friend went hiking in the woods, where they drank a few beers. After finishing hiking, they returned to Johnson's house and drank more beer. Johnson then drove her friend to his house, where they sat outside talking in Johnson's vehicle until Johnson realized she was running out of gas. A little before 1:00

a.m. on January 25, Johnson drove the two to a gas station. Johnson bought a six-pack of beer at the gas station and then began driving the pair back to the friend's house.

¶5 Ravalli County Dispatch received a 911 call as Johnson was leaving the gas station. The caller told dispatch that he was at the Town Pump near Woodside and "spotted a couple getting out of their minivan stumbling into the gas station, I believe they're gonna be driving under the influence," described the red van and gave its Oregon plate number, and stated "they appear to both be intoxicated." The caller also informed dispatch that the couple was "coming out with a six pack," what clothes the couple was wearing, and that there was a dog in the van. The caller identified himself to dispatch and told dispatch that, in addition to stumbling, the couple was laughing and "clearly appeared to be" intoxicated. The caller told dispatch the female was driving the van and where it appeared to be heading before letting dispatch know there was "a sheriff truck right behind them now."

¶6 The "sheriff truck" observed by the 911 caller was driven by Ravalli County Sheriff's Office Sergeant Clarence Jessop. Sergeant Jessop, who had heard Ravalli County Dispatch sending another officer to respond to the call over the radio, was in the area and pulled up behind Johnson's van while it was stopped at a red light shortly after leaving the gas station. Sergeant Jessop observed the van's registration appeared to be expired and confirmed the registration was in fact expired with dispatch before initiating a traffic stop of Johnson's vehicle. Sergeant Jessop asked Johnson if she knew her tags were expired, to which Johnson responded she knew and was "going to court for it" in a few days. Johnson stated she did not have her driver's license with her, but gave Sergeant Jessop her name and Oregon driver's license number. She was unable to produce a valid registration.

3

Sergeant Jessop later learned Johnson's driver's license was suspended. Sergeant Jessop, smelling alcohol and noticing several empty beer cans on the floor of the vehicle, asked Johnson who in the vehicle had been drinking tonight. Johnson responded that nobody had been drinking and told Sergeant Jessop, "I can pass a breathalyzer, I swear."

¶7 Sergeant Jessop had Johnson exit her vehicle to perform standardized field sobriety tests (SFSTs). Upon exiting the vehicle, Johnson told Sergeant Jessop she had "a couple of beers" after she got off work around "11." Sergeant Jessop noticed several indicators of impairment during the SFSTs. After finishing the SFSTs, Sergeant Jessop attempted to obtain a breath sample from Johnson with a preliminary breath test (PBT). Sergeant Jessop went through the PBT instructions with Johnson and attempted to get a sample from her "about eight" times, but he was ultimately unable to get a proper sample and believed "she was trying to fake the test." Following the PBT attempts, Sergeant Jessop placed Johnson under arrest for DUI.

¶8 Sergeant Jessop handcuffed an agitated Johnson and placed her in the back of his patrol vehicle. With the door open, Sergeant Jessop attempted to read Johnson the implied consent advisory while she continued a tirade and repeatedly moved so her legs were outside of the vehicle. Sergeant Jessop dropped his clipboard containing the implied consent advisory on the ground. He bent over to pick it up so he could continue reading the advisory form. When Sergeant Jessop stood back up with his clipboard, Johnson kicked him "right in the testicles." Sergeant Jessop informed Johnson she would now also be getting charged with assault on a peace officer. Sergeant Jessop eventually completed reading the implied consent advisory and took Johnson to the hospital for a blood test after

4

she agreed to give a sample. Once at the hospital, however, Johnson refused to consent to a blood test.

¶9 On February 5, 2021, Johnson was charged with felony assault on a peace officer, misdemeanor DUI, misdemeanor driving while license suspended or revoked, and misdemeanor expired registration. The matter ultimately went to a jury trial on August 8 and 9, 2022. During a pretrial conference on the morning of the first day of trial, Johnson sought to have the 911 call excluded as hearsay because the State indicated it was not going to have the 911 caller testify at trial. The State asserted the 911 call was admissible under the business records exception of M. R. Evid. 803(6) through the testimony of Ravalli County Dispatch employee Amy Cianflone. The District Court overruled Johnson's hearsay objection and determined the call would be admissible under M. R. Evid. 803(6).

¶10 The State's first witness at trial was Cianflone. Once again, Johnson's counsel objected to the admission of the 911 call, noting there was no opportunity to cross-examine the caller "regarding what I believe are the inappropriate conclusions and opinions that are made in that call." The State again asserted the call was admissible pursuant to the business records exception of Rule 803(6). The District Court again overruled Johnson's hearsay objection and determined there was adequate foundation to admit the exhibit. The 911 call was then played in full for the jury. The jury also heard the testimony of Sergeant Jessop; Montana Highway Patrol Trooper Andrew McFarland, who assisted Sergeant Jessop with the traffic stop; and Johnson.

¶11 The jury convicted Johnson of all four charged offenses. The District Court held a sentencing hearing on September 29, 2022. At that hearing, the court did not impose an

"Audit Hearing" requirement on Johnson. In the court's written October 25, 2022 Judgment and Commitment, however, the court did impose an "Audit Hearing" condition, requiring Johnson to personally appear on January 29, 2026 "to review the status of fines/fees owing and incomplete condition requirements."

¶12 Johnson appeals. Additional facts will be discussed as necessary below.

## STANDARD OF REVIEW

¶13 We review a trial court's interpretation of the Sixth Amendment to the United States Constitution de novo. *State v. Staudenmayer*, 2023 MT 3, ¶ 10, 411 Mont. 167, 523 P.3d 29 (citing *State v. Mizenko*, 2006 MT 11, ¶ 8, 330 Mont. 299, 127 P.3d 458).

¶14 We review criminal sentences for legality. *State v. Souther*, 2022 MT 203, ¶ 6, 410 Mont. 330, 519 P.3d 1 (citing *State v. Seals*, 2007 MT 71, ¶ 7, 336 Mont. 416, 156 P.3d 15).

## DISCUSSION

¶15 *1. Whether the District Court violated Johnson's right to confront witnesses against her under the United States and Montana Constitutions by admitting the 911 call in its entirety at trial and, if so, whether such error was harmless.*

¶16 The Sixth Amendment's Confrontation Clause, applicable to state prosecutions through the Fourteenth Amendment, guarantees a criminal defendant's right "to be confronted with the witnesses against him." U.S. Const. amends. VI, XIV; *see also* Mont. Const. art. II, § 24 ("[T]he accused shall have the right . . . to meet the witnesses against him face to face."). Johnson asserts her constitutional right of confrontation was violated by the District Court admitting the 911 call in its entirety at trial, because the 911 caller's statements that she and her friend were intoxicated and were about to commit the crime of

6

DUI were testimonial statements she had no opportunity to cross-examine. The State contends the 911 call was properly admitted into evidence under the business record exception and that the 911 caller's statements were nontestimonial present sense impressions. We agree with Johnson that the 911 caller's specific statements that Johnson was "intoxicated" and "gonna be driving under the influence" were testimonial statements implicating the constitutional right to confrontation and therefore inadmissible under any hearsay exception.

¶17 We begin our analysis on a point where the parties agree: the 911 recording was hearsay. Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). The State did not call the 911 caller to testify at trial and Johnson had no opportunity to cross-examine him.

¶18 Hearsay statements are inadmissible unless they meet a hearsay exception. M. R. Evid. 802. Two hearsay exceptions are relevant here. The first is the business records exception, which allows admission of "[a] memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnosis, made at or near the time of the acts, events, conditions, opinions, or diagnosis, if kept in the course of a regularly conducted business activity, and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness." M. R. Evid. 803(6). The second is the present sense impression, which allows admission of a

7

"statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." M. R. Evid. 803(1).

¶19 There is no serious dispute that the 911 call recording constitutes a business record in this case, and Cianflone, a team lead at the Ravalli County 911 dispatch center, was certainly a qualified witness to testify as to how that recording came about, satisfying the standard of Rule 803(6). While the 911 recording may be admissible as a business record under Rule 803(6), the "details as to the out-of-court statements made by the person who called 911 are not admissible unless covered by a separate hearsay exception." *United States v. Sallins*, 993 F.2d 344, 347 (3rd Cir. 1993). The actual statements of a caller on a 911 recording, who is under no duty to report, constitute double hearsay and "must satisfy a separate hearsay exception." *Bemis v. Edwards*, 45 F.3d 1369, 1372 (9th Cir. 1995).

¶20 To be admissible, the 911 caller's statements in this case must, in addition to the Rule 803(6) business records exception, also be admissible as "present sense impression[s]" under Rule 803(1).[1] There is also no dispute that nearly all of the caller's observations on the call do in fact meet the 803(1) present sense impression exception. The caller's description of Johnson's clothing, that she was stumbling and laughing, that she bought a six-pack of beer, the color and license plate of her van, the fact there was a dog in the vehicle, all of these are admissible as present sense impressions and are

[1] The admission of 911 call recordings typically comes through either the present sense impression or the excited utterance exceptions to the hearsay rule. *See, e.g., State v. Norris*, 2015-Ohio-624, ¶ 12 (Ohio Ct. App. 2015) (noting admission of 911 calls at trial typically occurs "under the excited utterance or the present sense impression exception to the hearsay rule"). Here, the State does not contend the 911 caller's statements would be admissible under the excited utterance exception of M. R. Evid. 803(2).

8

nontestimonial statements. Johnson concedes as much in her briefing. The only dispute centers around two opinion statements made by the caller: that Johnson and her friend were "intoxicated" and that they were "gonna be driving under the influence." While it is possible these statements could potentially satisfy Rule 803(1) as "statement[s] describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter," our constitutional concern is whether these opinion statements are testimonial or nontestimonial.

¶21 "A hearsay statement is not unquestionably admissible just because it fits into a hearsay exception—the defendant's Sixth Amendment confrontation right remains a fundamental consideration that may not be infringed upon, state evidentiary rules aside." *State v. Laird*, 2019 MT 198, ¶ 83, 397 Mont. 29, 447 P.3d 416 (citation omitted). Whether a hearsay statement's admission implicates a defendant's confrontation rights depends on whether the statement is testimonial or nontestimonial. *Laird*, ¶ 83 (citing *Michigan v. Bryant*, 562 U.S. 344, 357-58, 131 S. Ct. 1143, 1155 (2011) and *Crawford v. Washington*, 541 U.S. 36, 68, 124 S. Ct. 1354, 1374 (2004)). "If the hearsay statement is testimonial, the statement's admission implicates the defendant's Sixth Amendment confrontation rights and is only admissible if the declarant is unavailable and if the defendant had a prior opportunity to cross-examine the declarant." *Laird*, ¶ 83 (citations omitted). "[T]he declarants of testimonial statements introduced into evidence must be subject to cross-examination, regardless of whether their statements are otherwise admissible under state evidentiary rules, such as a hearsay exception." *Staudenmayer*, ¶ 17.

9

¶22 "The question is whether, in light of all the circumstances, viewed objectively, the primary purpose of the conversation was to create an out-of-court substitute for trial testimony." *Ohio v. Clark*, 576 U.S. 237, 245, 135 S. Ct. 2173, 2180 (2015) (cleaned up). We use the primary purpose test to determine whether a statement is testimonial. *Staudenmayer*, ¶ 23. Additionally, in Montana, we have determined that "generally, when a declarant knowingly speaks to a police officer or governmental agent, her statements are presumed testimonial. If, however, the declarant had objective reason to believe that her statement would serve only to avert or mitigate an imminent or immediate danger and the agent who received the statement had no intent to create evidence, the statement is presumed to be nontestimonial." *Mizenko*, ¶ 23.

¶23 At trial, Johnson objected to the admission of the 911 caller's "conclusions and opinions" because she had no opportunity to cross-examine him. The District Court performed no analysis of the caller's actual statements, admitting the entire call pursuant to the business records exception. The blanket admission of the entire call was error because the caller's statements were required to satisfy a separate hearsay exception to be admissible. *See Sallins*, 993 F.2d at 347; *Bemis*, 45 F.3d at 1372.

¶24 The 911 caller in this case was speaking to a government agent; accordingly, his opinion statements regarding Johnson's intoxication and his belief she was about to commit the crime of DUI are presumed to be testimonial in nature. *Mizenko*, ¶ 23. In contrast to his nontestimonial factual observations, the caller's opinion statements are "functionally identical to any live, in-court testimony the State would have elicited" from him on direct examination should he have been called to testify. *Laird*, ¶ 106. While the caller had more

10

general objectives when calling 911, his statements that Johnson was intoxicated and about to commit the crime of DUI were "undoubtedly accusatory," *Laird*, ¶ 109, and "served as specific commentary regarding his opinion" of Johnson. *Laird*, ¶ 106. Under the facts of this case, "the statements' primary purpose was to create an out-of-court substitute for trial testimony." *Laird*, ¶ 106.

¶25 The U.S. Supreme Court has noted that, while the content of most 911 calls is generally nontestimonial, portions of the call may "become testimonial" and have instructed that trial courts "should redact or exclude the portions of any statement that have become testimonial, as they do, for example, with unduly prejudicial portions of otherwise admissible evidence." *Davis v. Washington*, 547 U.S. 813, 829, 126 S. Ct. 2266, 2277 (2006). The District Court should have excised the testimonial statements from the 911 recording prior to playing it for the jury. The admission of those statements violated Johnson's constitutional right of confrontation. "Where testimonial statements are at issue, the only indicium of reliability sufficient to satisfy constitutional demands is the one the Constitution actually prescribes: confrontation." *Crawford*, 541 U.S. at 68-69, 124 S. Ct. at 1374.

¶26 While we have determined the admission of the 911 call was error because the admission of the caller's opinions regarding Johnson's intoxication and his belief she was going to commit the crime of DUI violated Johnson's confrontation right, our inquiry does not end there. "A constitutional deprivation of the defendant's confrontation right is a trial error and is subject to harmless error review. The Court considers the importance of the witness'[s] testimony in the prosecution's case, whether the testimony was cumulative, and

11

the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points." *State v. Martinez*, 2023 MT 251, ¶ 19, 414 Mont. 340, 545 P.3d 652 (citing *State v. Mercier*, 2021 MT 12, ¶ 31, 403 Mont. 34, 479 P.3d 967) (internal citation and quotation marks omitted).

¶27    "[T]he State, as the 'beneficiary of a constitutional error[,]' bears the burden of proving that the error was harmless beyond a reasonable doubt." *Mercier*, ¶ 31 (quoting *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 828 (1967)).  The State has met its burden of proving harmlessness in this case.

¶28    Johnson was convicted of four crimes at trial: assault on a peace officer, driving under the influence, driving while suspended or revoked, and expired registration.  Johnson testified at trial that she was not intoxicated during the traffic stop, and asserts the 911 caller's opinions that she was intoxicated damaged her credibility such that her testimony was disregarded by the jury.  Even without the 911 caller's opinion regarding Johnson's alleged intoxication, the jury saw a video of her during the traffic stop, in which she noted she was "going to court" for the expired registration, struggled to follow directions, admitted to drinking, berated Sergeant Jessop, and apparently kicked him; heard the testimony of Sergeant Jessop that he smelled alcohol, saw empty beer cans on the floor of the van, that Johnson had several indicators of impairment on the SFSTs, that she tried to "fake" the PBT test, that she kicked him in the testicles, that Johnson's registration was expired and her driver's license was suspended; and heard the testimony of Trooper McFarland that he noticed several clues of impairment when he watched Johnson perform the SFSTs for Sergeant Jessop, smelled alcohol on Johnson, and watched Johnson kick

12

Sergeant Jessop. The jury also heard the testimony of Johnson that she had been drinking, her belief she passed the PBT, her admission she had not been working at all the day of the stop, and her testimony that Sergeant Jessop made up getting kicked in the testicles. There is "no reasonable possibility" the erroneous admission of the two testimonial statements in the 911 call might have contributed to Johnson's conviction in this case. *State v. Derbyshire*, 2009 MT 27, ¶ 47, 349 Mont. 114, 201 P.3d 811. The jury had full opportunity to compare what they saw and heard (both on the video and from the testimony of Sergeant Jessop and Trooper McFarland) to Johnson's testimony and make their own credibility determination. *State v. Torres*, 2021 MT 301, ¶ 55, 406 Mont. 353, 498 P.3d 1256. There was more than ample evidence for the jury to determine Johnson was intoxicated during her encounter with Sergeant Jessop without relying on the 911 caller's statement asserting Johnson was intoxicated at the gas station. As such, the admission of the 911 caller's testimonial statements regarding Johnson's intoxication was harmless and her convictions are affirmed.

¶29      *2. Whether the District Court's written judgment imposing an "Audit Hearing" condition conflicts with its oral pronouncement of sentence.*

¶30      A district court's oral pronouncement of a criminal sentence is the legally effective sentence and valid, final judgment. *State v. Hamilton*, 2018 MT 253, ¶ 50, 393 Mont. 102, 428 P.3d 849 (citing *State v. Thompson*, 2017 MT 107, ¶ 8, 387 Mont. 339, 394 P.3d 197). "[I]n the event of a conflict between the oral pronouncement of sentence and the written judgment and commitment, the oral pronouncement controls." *State v. Lane*, 1998 MT 76, ¶ 48, 288 Mont. 286, 957 P.2d 9. Here, the State concedes the District Court's inclusion

13

of a requirement Johnson personally appear for an "Audit Hearing" in its written judgment conflicts with the court's oral pronouncement which did not include such a requirement and the matter must be remanded to strike the condition.

## CONCLUSION

¶31    While the District Court violated Johnson's constitutional right to confrontation by admitting the 911 call in its entirety, as it contained two testimonial statements which are inadmissible under any hearsay exception, the error was harmless as the jury heard more than enough untainted evidence to support its convictions. The "Audit Hearing" requirement of the District Court's written judgment does not conform to the oral pronouncement of sentence and must be stricken.

¶32    Affirmed and remanded.

/S/ INGRID GUSTAFSON

We Concur:

/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JAMES JEREMIAH SHEA
/S/ JIM RICE

14